**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LISA M. CADY,

        Plaintiff,

v.                                                                                          Case No. 3:21-cv-195-JRK

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,

        Defendant.

_____

## **OPINION AND ORDER**[1]

### **I. Status**

Lisa M. Cady ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of an adjustment disorder, anxiety, depression, carpal tunnel syndrome, attention deficit disorder, being "[d]eaf in [the] right ear" and having "hearing loss [in the] left ear," arthritis in her left hip, chronic back issues and pain, chronic venous insufficiency, and myocardial infarction. Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"),

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed August 10, 2021; Reference Order (Doc. No. 17), entered August 11, 2021.

filed August 10, 2021, at 79-80, 97, 245. Plaintiff filed an application for DIB on February 19, 2019, alleging a disability onset date of July 1, 2016.[2] Tr. at 203-04. Plaintiff later amended her alleged disability onset date to September 1, 2017. Tr. at 214. The application was denied initially, Tr. at 79-93, 94, 95, 122-24, and upon reconsideration, Tr. at 96-113, 114, 115, 126-31.

On September 17, 2020, an Administrative Law Judge ("ALJ") held a hearing via telephone,[3] during which Plaintiff (represented by a non-attorney representative, see Tr. at 33, 121) and a vocational expert ("VE") testified. Tr. at 33-72. At the time, Plaintiff was forty-eight (48) years old. Tr. at 41. On October 5, 2020, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 15-27.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council. See Tr. at 4-5 (Appeals Council exhibit list and order), 197-99 (request for review). On January 4, 2021, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On February 28, 2021, Plaintiff commenced this action

---

[2] Although actually filed on February 20, 2019, see Tr. at 203, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as February 19, 2019, see, e.g., Tr. at 79, 96.

[3] The hearing was held via telephone because of extraordinary circumstances presented by the COVID-19 pandemic. See Tr. at 35, 73-75.

under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), through counsel, seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues: 1) the ALJ's "rationale for rejecting [Plaintiff's] need to elevate her legs and the rejection of [a treating cardiovascular specialist's] statement regarding [Plaintiff's] need to elevate her legs was not supported by substantial evidence"; 2) the ALJ "erred in failing to consider the work-related limitations associated with [Plaintiff's] bilateral hip and lumbar spine impairments"; and 3) the ALJ "erred in ignoring evidence of record documenting limitations related to [Plaintiff's] combined impairments." Plaintiff's Brief (Doc. No. 22; "Pl.'s Br."), filed November 26, 2021, at 1; see id. at 12-17, 17-22, 22-25. Responding, Defendant on January 20, 2022 filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 23; "Def.'s Mem."). After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

(Continued…)

Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 17-26. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since September 1, 2017, the alleged amended onset date." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: acute myocardial infarction; chronic venous insufficiency; hearing loss not treated with cochlear implantation; anxiety and obsessive-compulsive disorders; and depressive, bipolar and related disorders." Tr. at 17 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of

---

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 4 -

impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 18 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b). She can lift and/or carry 20 pounds occasionally, 10 pounds frequently. She can stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday, and can sit, with normal breaks, for a total of 6 hours per 8-hour workday. She can frequently push and pull with the left lower extremity. In terms of postural limitations, she can occasionally climb ladders, ropes, or scaffolds, and frequently climb ramps and stairs, balance, kneel, stoop, crouch and crawl. In terms of communicative limitations, she is restricted to work in an environment with a "quiet noise intensity level," as the Selected Characteristics of Occupations defines that term, which gives examples of library, private office, funeral reception, golf course or an art museum. In terms of mental limitations, she is limited to the performance of simple and routine tasks, can only occasionally interact with the public, can occasionally interact with supervisors, and is limited to low-stress work, which I define as no fast-paced assembly line or strictly-monitored daily production quota requirements, and occasional changes in a routine work setting.

Tr. at 20 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "sales rep for computer software," and a "combination job as a retail sales clerk . . . stock clerk . . . and . . . accounting clerk." Tr. at 25 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("44 years old . . . on the alleged

disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 25 (emphasis and citations omitted), such as "router," "routing clerk," and "scheduler," Tr. at 26. The ALJ concluded Plaintiff "has not been under a disability . . . from September 1, 2017, through the date of th[e D]ecision." Tr. at 26 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court

to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

For ease of discussion, the undersigned addresses Plaintiff's second issue, followed by the first and third issues.

### A. RFC Assessment

Plaintiff argues the ALJ erred in failing to find that she has "any severe [orthopedic] impairments and implicitly conclud[ing] that her orthopedic conditions did not result in even minimal work-related limitations." Pl.'s Br. at 17 (citing Tr. at 17). In making this argument, Plaintiff focuses on evidence that she suffered from hip and back pain. See id. at 17-20. Plaintiff contends "the ALJ's superficial review of the evidence caused him to overlook her orthopedic impairments." Id. at 21. Responding, Defendant acknowledges reports of hip and back pain, but asserts the ALJ's RFC finding is supported overall and the record does "not establish that Plaintiff had greater limitations." Def.'s Mem. at 15, 14-16.

Step two of the sequential evaluation process requires the ALJ to determine whether a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id. A claimant has the burden of proving that impairments are severe. See Bowen, 482 U.S. at 146 n.5 (recognizing the claimant's burden of proof at step two to show "a medically severe impairment or combination of impairments"). Further, the impairment either "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509; see also Walker v. Comm'r, Soc. Sec. Admin., 835 F. App'x 538, 542 (11th Cir. 2020) (unpublished).

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen, 482 U.S. at 141. The Regulations provide six examples of "basic work activities": "(1) Physical functions such as walking,

standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1522; see also Walker, 835 F. App'x at 541-52. "The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 902 (11th Cir. 2011) (unpublished). To be sure, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished) (emphasis added); see Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (recognizing that "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is sufficient to satisfy step two).

There are occasions when an ALJ identifies one or more impairments at step two but does not identify all of the impairments that should be considered severe. Any omission of a particular severe impairment at step two is harmless if "the ALJ considered all of [the] impairments in combination at later steps in

the evaluation process." Burgin, 420 F. App'x at 903 (citation omitted); see Heatly, 382 F. App'x at 825 (stating that an "ALJ is required to demonstrate that [he or she] has considered all of the claimant's impairments, whether severe or not, in combination"); Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984) (finding that an ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments").

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, the ALJ found at step two that Plaintiff has a number of severe impairments, but none of them are orthopedic in nature. See Tr. at 17. Even

assuming that Plaintiff has an orthopedic impairment that is severe, the ALJ's failure to find that at step two is harmless. The ALJ's Decision makes clear that he considered the medical evidence containing orthopedic complaints at later steps of the sequential inquiry.

In determining Plaintiff's RFC and discussing Plaintiff's testimony and the medical evidence of record, the ALJ repeatedly discussed Plaintiff's allegations of hip and back pain and measures taken to relieve it. See Tr. at 21-25. The ALJ recognized Plaintiff's testimony about her "problems with her lower back and neck for which she received physical therapy" and "bouts of rheumatoid arthritis that affected[, inter alia,] her . . .back [and] neck." Tr. at 21. The ALJ also discussed in detail medical records documenting treatment for hip and back pain. Tr. at 21-23. In the end, the ALJ found that Plaintiff's treatment (including the physical therapy) was "conservative," Tr. at 23, and the assigned RFC adequately accounted for the limitations associated with Plaintiff's conditions, Tr. at 20. The ALJ's findings are supported by substantial evidence and need not be disturbed.

### B. Medical Opinion Regarding Need to Elevate Legs

Plaintiff argues the ALJ erred in evaluating the opinion of treating cardiovascular specialist Vincent Caracciolo, M.D. regarding the need for Plaintiff to elevate her legs every hour for five to ten minutes due to her vein insufficiency. Pl.'s Br. at 1, 12-17. According to Plaintiff, having accepted at step

two that Plaintiff suffers from "chronic venous insufficiency," Tr. at 18, the ALJ was not free at later steps to reject the opinion of her treating specialist about functional limitations associated with that impairment, Pl.'s Br. at 13, 15-16. Plaintiff also contends that leg elevation is accepted treatment for this impairment. Id. at 13-14. Finally, Plaintiff argues that the ALJ's reasons for finding Dr. Caracciolo's opinion to be unpersuasive on the issue of leg elevation are not supported by substantial evidence or are otherwise erroneous. Id. at 14-17. Responding, Defendant argues the ALJ properly evaluated the required factors in addressing Dr. Caracciolo's opinion, and substantial evidence supports the ALJ's findings. Def.'s Mem. at 8-12.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Because Plaintiff filed her DIB application after that date, the undersigned applies the revised rules and Regulations.

Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to

perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); see also Walker v. Soc. Sec. Admin., Comm'r, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (unpublished) (citations omitted) ("Under the new regulatory scheme, the ALJ must articulate how persuasive he finds each medical opinion, but he no longer must assign more weight to a treating source's medical opinion or explain why good cause exists to disregard it.").

The following factors are relevant in an ALJ's consideration of a medical opinion: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to

- 13 -

explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).[5]

Here, Dr. Caracciolo opined on January 21, 2020 (on a pre-printed form entitled, "Physician's Opinion of Social Security Claimant") that Plaintiff "needs to prop her legs up above waste [sic] level every hour" for "5-10 minutes/hour" due to the medical condition of "vein insufficiency." Tr. at 547 (some capitalization omitted). The ALJ stated as follows regarding this opinion:

> I do not find persuasive the January 2020 statement of Dr. Caracciolo that [Plaintiff] needed to elevate her legs above waist level every hour for 5 to 10 minutes at a time due to vein insufficiency. This is inconsistent with his treatment notes and the evaluation of Dr. Feezor. These physicians recommended conservative treatment, such as wearing compression stockings and exercise several days a week. Thus, this opinion is not consistent with the MER. Indeed, this is not consistent with the lower extremity venous color-duplex scan report at Exhibit 10F/12-13 that shows no evidence of DVTs in the bilateral lower extremities and normal size incompetent veins. The medical records from First

---

[5] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

- 14 -

> Coast Heart and Vascular Center completely contradict this opinion.

Tr. at 24-25 (citations omitted).

Initially, to the extent Plaintiff suggests that the ALJ was required to accept Dr. Caracciolo's opinion regarding her day-to-day work-related functioning level just because the ALJ found at step two that Plaintiff has the severe impairment of chronic venous insufficiency, Plaintiff misses the mark. As set forth in detail in Section IV.A., the two inquiries are not the same. One is an initial inquiry performed at an early phase of the sequential evaluation process and only considers whether a claimant suffers from severe impairments; the other is performed at later phases and considers medical opinions and other evidence about how a claimant can function as a result of those impairments.

Further, the ALJ's reasons for finding Dr. Caracciolo's opinion unpersuasive are supported by substantial evidence. Regarding Plaintiff's vein insufficiency, Dr. Caracciolo and others generally recommended conservative measures like compression and exercise. See Tr. at 363-408, 413-40, 446-503, 525-29, 540-46, 588-602. There are a few recommendations of "leg elevation when possible" in the medical records of Dr. Caracciolo and his associates, Tr. at 593, 598, and a recommendation of "elevation" in the record of a primary care provider, Tr. at 542, but even these recommendations do not suggest a need to

elevate every hour of every day for five to ten minutes per hour. A medical record of vascular surgeon Robert J. Feezor, M.D., recommends only "compression use and RTC prn." Tr. at 527. In short, the ALJ's observation that the opinion is not consistent with Dr. Caracciolo's records or the rest of the medical records is supported by substantial evidence.

Plaintiff also takes issue with the ALJ's finding that there is "no evidence of DVTs in the bilateral lower extremities and normal size incompetent veins," Tr. at 24-25, arguing that "the lack of a positive DVT does not mean that [Plaintiff] did not have chronic venous insufficiency and likewise was not a basis for rejecting a treating cardiovascular specialist's opinion," Pl.'s Br. at 17. But, the ALJ did not rely solely on this finding in determining the opinion was unpersuasive. Further, it appears the ALJ relied on the lack of a positive DVT as evidence that Plaintiff's overall condition was not so severe as to require Plaintiff to elevate her legs with the frequency suggested by Dr. Caracciolo. The ALJ did not reversibly err in this regard.

### C. Third-Party Statement

Plaintiff challenges the ALJ's failure to address a letter written by a previous employer, Edgar M. Rollins, about Plaintiff's former employment and inability to complete tasks even with accommodations. Pl.'s Br. at 22-25. Plaintiff contends the failure to address the letter "was not harmless" because "the evidence was not cumulative of other evidence." Id. at 23. Responding,

Defendant contends that the revised Regulation addressing third-party statements and applicable to Plaintiff's claim does not require the ALJ to specifically address such statements in the Decision. Def.'s Mem. at 16-17. Even if the ALJ should have addressed the statement, argues Defendant, the failure to do so was harmless because the statement was duplicative of other evidence in the record. Id. at 17-19.

The Regulations applicable to Plaintiff's claim provide that an ALJ is "not required to articulate how [he or she] considered evidence from nonmedical sources using . . . requirements . . . [that are applicable to medical opinions and prior administrative findings]." 20 C.F.R. § 404.1520c(d); see also 20 C.F.R. § 404.1513(a)(4). So, while nonmedical source evidence need not be analyzed in the same manner that medical opinions and prior administrative findings must be discussed, the Regulations upon which Defendant relies do not appear to suggest that nonmedical source evidence can be ignored altogether.

In any event, assuming the ALJ should have addressed the letter in some manner, the failure to do so was harmless in this instance. Although the letter does detail the struggles Plaintiff encountered while working from the period of January 2017 through August 2018, Tr. at 300, it is duplicative of Plaintiff's allegations of the effects of her impairments. The ALJ specifically addressed Plaintiff's allegations and rejected them to the extent they are inconsistent with

the assigned RFC. See Tr. at 20, 25. The ALJ's findings are supported by substantial evidence.

## V.   Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on May 12, 2022.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record